UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81342-CIV-MARRA/MATTHEWMAN

BRUCE C. ROSETTO
and ROXANNE ROSETTO,

    Plaintiffs,
vs.

CHARLES MURPHY and
CLARK HILL PLC,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [DE 11] and Plaintiffs' Motion for Leave to File Second Amended Complaint [DE 38]. The Court has carefully considered the entire Court file and is otherwise fully advised in the premises.

## INTRODUCTION

This matter was removed to federal court based upon diversity of citizenship and an unspecified amount of damages in excess of $15,000, which defendants assert "is more than likely" to meet the $75,000.00 jurisdictional threshold. DE 1. Plaintiffs have not objected to this assumption.

Plaintiff, Bruce Rosetto, filed a one-count complaint in circuit court for libel *per se* alleging that defendant Charles Murphy, as counsel for a receiver, made malicious false statements to the well-known legal and business publication, the Daily

Business Review ("DBR").  On April 4, 2014, the DBR published a cover story with a large photo of Mr. Rosetto titled, *Greenberg Fights Subpoena Seeking Clawback Money from Partner*.  A copy of the article is attached to the complaint.  The DBR article contains two quotes from Mr. Murphy as follows:  "The investigation that we conducted to date has confirmed that Mr. Rosetto participated in securities fraud with respect to the Royal Palm Real Estate Investment Fund", and "Legisi sent $9.3 million in investor's money to Royal Palm, and that money is gone."   DE 6-2, DE 69 at 2.  It is only the first alleged statement that is the basis for the instant complaint.

Mr. Rosetto alleges that this first statement quoted above is a false assertion of fact, was not couched in what was alleged in any pleading, and detrimentally impacted his business and profession as a corporate and securities lawyer.  Compl. ¶ 30.  Mr. Rosetto amended his complaint to add his wife, Roxanne Rosetto, as a plaintiff with a claim for loss of consortium.  DE 6.

Defendant Mr. Murphy is counsel for Robert Gordon, a receiver appointed in the action entitled *Securities & Exchange Comm'n v. Gregory N. McKnight and Legisi Holdings, LLC*, Case No. 08-11887 (E.D. Mich. 2008) (the "Receiver").  On May 7, 2009, the Receiver commenced an action against Bruce Rosetto, Roxanne Rosetto, and others for alleged violations of the U.S. Exchange Act, the Michigan Uniform Securities Act, the Florida Securities Transaction Act, common law fraud, misrepresentation, unjust enrichment, and avoidance of fraudulent transfers under the Michigan Uniform Fraudulent Conveyances Act, among other claims.  *See Gordon*

*v. Royal Palm Real Estate Invest Fund I, LLP, et al.*, Case No. 09-CV-11770 (E.D. Mich. 2009), DE 11-4 (the "Michigan Action"); DE 19, ¶ 5. In the Michigan Action, the Receiver claimed Bruce Rosetto violated securities laws by having control over the day-to-day activities and management of Royal Palm Investment Fund in which Legisi invested millions of dollars and which Rosetto knew or should have known were illegal proceeds from a Ponzi scheme Legisi was operating.

Defendants move to dismiss the Amended Complaint ("Complaint" or "Compl.") based on several arguments. First, they assert immunity from suit pursuant to the *Barton* doctrine because Mr. Murphy was acting in the performance of his duty to a receiver and Plaintiffs have not obtained leave from the appointing court. Second, they argue the lawsuit is barred by Florida's litigation privilege. Third, they argue that the statement was pure opinion and thus not actionable. And finally, they argue Mrs. Rosetti's loss of consortium claim is barred by Florida's two-year statute of limitations. DE 11.

After carefully considering defendants' first argument regarding application of the *Barton* doctrine, the Court set an evidentiary hearing on the question of whether defendant Charles Murphy was acting pursuant to the authority of the Receiver when the alleged libelous statements were made ("subject issue"). *See* DE 52. The parties filed a Joint Motion to Continue Evidentiary Hearing, to take limited discovery regarding the subject issue which would include procuring "target document production" by defendants, and limited depositions of Mr. Murphy and Mr. Gordon.

DE 53. The parties represented that they anticipated to be able to present evidence concerning the subject issue by depositions and affidavits which would obviate the need for an evidentiary hearing. *Id*.

The Court granted the motion [DE 54] and on April 28, 2017, the parties submitted a Joint Status Report. *See* DE 64. They stated that the depositions of the Receiver and Mr. Murphy were taken and that documents related to the subject issue were produced. The parties requested that they be allowed to submit further briefing on the subject issue, under seal, which request the Court granted. *See* DE 65, 67. Plaintiffs submitted a memorandum in support of their position on the issue [DE 68] and Defendants submitted a memorandum supported by eight exhibits [DE 69]. The Court has carefully considered all relevant filings, including the supplemental briefs and exhibits.

## **LEGAL STANDARD**

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(1) may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007) ("*McElmurray*"). A factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *See McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). If the defendant challenges the factual predicate of subject matter jurisdiction, this Court may then

go beyond the allegations of the complaint, without converting the motion to dismiss to a summary judgment proceeding, and consider evidence to determine if there are facts to support the jurisdictional allegations. Fed. R. Civ. P. 12(b)(1); *Flournoy v. Govt. Nat'l Mortgage Assoc.*, 156 F. Supp. 3d 1375, 1378 (S.D. Fla. 2016); *McGee v. Cole*, 993 F. Supp. 2d 639 (S.D. W. Va. 2014). While a court must accept as true a plaintiff's allegations, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citing *Executive 100, Inc. v. Martin Cty.*, 922 F.2d 1536, 1539 (11th Cir. 1991) ("the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")).

Here, Defendants advance a factual attack on the Complaint arguing this Court lacks subject matter jurisdiction under the *Barton* doctrine. *See e.g., Palaxar Group, LLC v. Williams*, 2014 WL 5059286, at *15 (M.D. Fla. 2014) (granting motion to dismiss where district court considered the *Barton* doctrine as a factual attack on its subject matter jurisdiction); *Estate of Jackson-Platts v. Sandnes,* 2014 WL 408757, at *1 (M.D. Fla. 2014) (same). Accordingly, this Court may properly consider evidence outside the pleadings[1] in determining whether the Complaint should be dismissed.

---

[1] This Court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53-54 (11th Cir. 2006). In considering a motion to dismiss, this Court may, and does in this case, take judicial notice of the public

## DISCUSSION

The *Barton* doctrine, established by the Supreme Court in 1881, provides that before suit can be brought against a court-appointed receiver, "leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 127 (1881); *see also Davis v. Gray*, 83 U.S. 203, 218 (1872) (holding that the court appointing a receiver "will not allow him to be sued touching the property in his charge, nor for any malfeasance as to the parties, or others, without [the court's] consent"). The *Barton* Court held that if leave of court was not obtained, then the other forum lacked subject matter jurisdiction over the suit. *Barton*, 104 U.S. at 127; *see also, Patco Energy Express. LLC v. Lambros*, 353 F.App'x 379, 381 (11th Cir. 2009). Part of the rationale underlying *Barton* is that the court appointing the receiver has *in rem* subject matter jurisdiction over the receivership property. *Barton*, 104 U.S. at 136. As the Supreme Court explained, allowing the unauthorized suit to proceed "would have been a usurpation of the powers and duties which belonged exclusively to another court." *Id*. The *Barton* doctrine also applies to the receiver's agents. *See Lawrence v. Goldberg,* 573 F.3d 1265, 1269 (11th Cir. 2009).

Plaintiffs assert the *Barton* doctrine does not apply because (1) the Receiver did not authorize Mr. Murphy to speak to the media; (2) the case in which the

---

record filings in the Michigan cases that are referenced in the pleadings, and attached to the sealed supplemental filing, DE 69. *See Myrtyl v. Nationstar Mortg. LLC,* Case No. 15-CIV-61206, 2015 WL 4077376, at *1 (S.D. Fla. July 6, 2015) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)).

Receiver's authority emanates was closed at the time Mr. Murphy's statement was made; (3) statements to the media are outside the scope of the Receiver's duties; and (4) the statement violated Michigan Rules of Professional Conduct. As discussed below, Plaintiffs' arguments do not overcome the effect of the *Barton* doctrine.

1.  **Authorization to Speak with the DBR**

Plaintiffs argue the *Barton* doctrine does not apply because they specifically allege that the Receiver did not direct Mr. Murphy to speak with the DBR, and neither the Receiver nor the SEC have submitted a sworn statement averring that Mr. Murphy's alleged statement was authorized. DE 6 at ¶ 33, DE 13 at 6. In response, the Receiver submitted a declaration stating

> In response to a request for an interview from Julie Kay of the Daily Business Review to Charles Murphy, I authorized Charles Murphy, pursuant to Section XVII of the Order, to speak with Julie Kay regarding the Michigan Action and proceedings involving a subpoena served on the Greenberg Traurig firm.

*See* Declaration of Robert Gordon, ¶ 8, DE 19-1. After limited discovery and supplemental briefing on the subject issue, the Receiver testified that he authorized Mr. Murphy to speak to the press, which was within his authority to allow.[2] DE 69 at 4, Ex. 4. In addition, the Receiver sent an email to Mr. Murphy granting him authority to speak to the DBR by stating: "I don't care if you talk to [the reporter at the DBR] as long as it's purely factual." DE 69 at 4, Ex. 5. The Receiver testified that when he

---

[2] *See* section 3, *infra*.

used the word "factual," he included authority for Mr. Murphy to give an opinion, so long as the statement was, in fact, an accurate statement of his opinion. DE 69 at 5.

Moreover, Mr. Murphy's statement was based directly on public court filings such as the Receiver's Complaint against the Rosettos in the Michigan Action (DE 11-4) and the Receiver's Response to Greenberg Taurig's Motion to Quash Subpoena ("Receiver's Response") in the matter styled *In re: FINRA, Case No. 090169*, Case No. 13-MC-81015 (S.D. Fla. 2013) (DE 69, Ex. 7), *see* n.4 *infra*. In the Receiver's Response, the Receiver alleges "Bruce Rosetto was not only an attorney for the Respondents, but also participated directly in the fraud by creating the Royal Palm Fund specifically for the purpose of soliciting the funds of McKnight and Legis Marketing." DE 69 at 6, Ex. 6. In the Receiver's Complaint, the Receiver details Bruce Rosetto's participation in securities fraud by explaining Bruce Rosetto's "control over the day-to-day policy and management such that he functioned as a manager, partner, officer and director of the [Royal Palm Real Estate] Investment Fund Partnership, [Royal Palm Investment] Management Company, and [Royal Marketing Services, LLC]." *See* First Amended Complaint, ¶ 19, *Receiver v. Bruce C. Rosetto, Royal Palm Real Estate, et al.*, Case No. 09-11770 (E.D. Mich. 2009), DE 11-4. The Receiver alleges ". . . Bruce Rosetto recognized that Legisi was offering untenable rates of return to its 'members' through the sale of unregistered securities and, therefore, knew or should have known that Legisi was operating a Ponzi scheme." *Id*. at ¶ 38. Further, the Receiver alleges that Bruce Rosetto made

numerous material omissions in connection with the sale of securities. *Id*. at ¶ 63.

Based on the foregoing, the alleged statement made to the media clearly originate from the Receiver's court filings. Since Murphy's statement was a reiteration of the position asserted by the Receiver in the pending litigation, the contention that the alleged libelous statement to the DBR was not authorized by the Receiver is rejected.[3]

## 2. Status of the Michigan Action

Plaintiffs acknowledge the general proposition that a plaintiff must obtain leave from the appointing court in order to sue a receiver or his agents. *See* Response [DE 13] at 6; *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (the *Barton* doctrine applies to actions against a receiver as well as a receiver's counsel); *Scharrer v. Fundamental Admin. Serv., LLC*, 2013 WL 12169310, at *3 (M.D. Fla. 2013) (same). They claim, however, that "the Michigan Action, the relevant case

---

[3] In their supplemental memorandum of law in opposition to the Motion, Plaintiffs ague that "Mr. Murphy was not authorized to make false statements. The crux of this case is whether the DBR statements were false." DE 68 at ¶ 9. Plaintiffs further argue that "this factual attack on subject matter jurisdiction implicates an element of Rosetto's libel cause of action . . . [and] [a]s such, the determination of subject matter jurisdiction is premature . . ." *Id*. at ¶ 10.
    The Court is not examining the merits of Plaintiffs' Complaint regarding whether the statement was false, only whether Mr. Murphy is immune from suit pursuant to the *Barton* doctrine. Simply put, was Mr. Murphy acting pursuant to the authority of the Receiver or not? Whether the statement was libelous is not the question. In determining whether the *Barton* doctrine applies, you do not look to the merits of the claim being asserted, but to whether this Court has the authority to hear the matter. If the Receiver or his agents had to defend the merits of the case in order to determine whether the doctrine applied, the doctrine would be ineffectual.

from which the Receiver's authority emanates, was closed" when the alleged libelous statement was made, and therefore, the *Barton* doctrine does not apply. *Id*. They cite *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 n.8 (1993) for the proposition that "[Absolute immunity] does not apply to or include any publication of defamatory matter before the commencement, or after the termination of the judicial proceeding . . ." *Id*. The Court rejects Plaintiffs contention.

Plaintiffs are correct in stating that the Michigan Action was closed before the DBR article was published. They are incorrect, however, in the inferences they attempt to draw from that fact, namely, that because the Michigan Action was closed, the Michigan Action was over, or that the Receiver was not still acting on behalf of the estate. In fact, contrary to the ordinary sense of the word, it is not unusual for a case to continue long after it is closed. *See, e.g., Securities & Exchange Comm'n v. Michael Lauer*, 03-CV-80612-MARRA (closed on 9/22/09, last order entered on 4/28/17).

The Michigan Action was closed for "administrative and statistical purposes" pending arbitration proceedings in a related FINRA action. In the order closing the case, the court emphasized that a live dispute still existed despite the case's closure by stating:

> Nothing in this Order or within the related docket entry shall be construed as constituting a dismissal of the issues or representing a final disposition of this matter.

*See* Order Dismissing Case Pending Arbitration Proceedings, *SEC Receiver v. Bruce C.*

*Rosetto, Royal Palm Real Estate, et al.*, Case No. 09-CV-11770 (E.D. Mich. 2009). DE 11-7.

In fact, the record reveals that the Receiver reported to the court on June 5, 2015, over one year after Mr. Murphy's comments to the DBR, that he was continuing to monitor the Michigan Action. *See,* Tenth Interim Report of Receiver dated June 5, 2015, *Securities & Exchange Comm'n v. McKnight, et al.*, Case No. 08-CV-11887 (E.D. Mich. 2008) ("The Receiver intends to continue . . . pursuing the Estate's claims . . . in the Royal Palm litigation). DE 11-6 at 7-8. Thus, despite the fact the case in which the Receiver was appointed was technically closed for administrative and statistical purposes, it was not dismissed, and the Receiver and his agents were still active in the litigation[4] at the time of the alleged libelous statements.

### 3. Statements Made to the Media

Plaintiffs also claim that the *Barton* doctrine does not apply because Mr. Murphy's statements were made to the media. This argument is unpersuasive. The Order Appointing Receiver specifically states "[t]he Receiver is authorized to communicate with all such persons as he deems appropriate to inform them of the status of this matter and the financial condition of the Receiver Estates." *See* DE 11-

---

[4] Case in point, the Receiver and his agents were involved in a subpoena related action with Greenberg Taurig in the matter styled *In re: FINRA, Case No. 090169*, Case No. 13-MC-81015 (S.D. Fla. 2013) ("Subpoena Action"). The Subpoena Action was the basis of the DBR article that stemmed from the Receiver's subpoena to Greenberg Traurig, Bruce Rosetto's employer, seeking various files related to Bruce Rosetto.

1 at 9. In his deposition, the Receiver testified that the media are encompassed within the persons he deems appropriate to inform of the status of the Michigan Action. DE 69 at 8-9, Exh. 4, Gordon Depo. 28-29. Further, the order appointing the Receiver states:

> In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

*See id.* at 4.

In *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599 (11th Cir. 1985) ("*Property Management*"), the appellant alleged that the receiver caused injury to and destruction of its business property by, among other things, "maliciously and deliberately releas[ing] news reports to the media ... that were false and defamatory." The appellant provided examples of the alleged defamatory reports released to the media which concerned the financial activities of the appellant that had led to the state court lawsuit and the establishment of the receivership. The Eleventh Circuit Court of Appeals found that this action did not indicate that the receiver engaged in activities *prima facie* beyond the scope of his official function. *Property Management*, 752 F.2d at 603. Since nothing in the complaint "indicated that [the receiver] had acted outside his authority," the court held the action was properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) on grounds of immunity.

*Property Management*, 752 F.2d at 604.

Plaintiffs argues *Property Management* is distinguishable on the facts because in *Property Management*, the receiver was active, the receiver's statements were arguably within the scope of his duties, and there were no allegations of professional misconduct. DE 13 at 7-8. Plaintiffs also argue that *Property Management* was decided before *Ball v. D'Lites Enterprises, Inc.*, 65 So.3d 637 (Fla. Dist. Ct. App. 2011) ("*Ball*") and *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ("*Buckley*"). The state court of appeal in *Ball* held that absolute immunity afforded by the litigation privilege did not extend to statements made to the world at large through a website and which were not made in connection with a judicial proceeding. *Ball*, 65 So.3d at 641. The Supreme Court in *Buckley* held that prosecutors are entitled to absolute immunity for prosecutorial acts, but not for investigative or administrative acts. *Buckley*, 509 U.S. at 278.

These arguments are unpersuasive. *See* section 1 and 2 *supra*, and section 4, *infra*. Moreover, neither *Ball* nor *Buckley* relate to a receivers' immunity or the *Barton* doctrine. As such, neither case has any relevance to the scope of a receiver's agent's duties or the application of the *Barton* doctrine. Accordingly, Plaintiffs' position that statements to media are categorically beyond the scope of a receiver's duties is rejected.

4. **Michigan Rules of Professional Conduct**

Plaintiffs assert that Mr. Murphy's statement to the DBR demonstrates that the statement falls outside the scope of the Receiver's authority because it violates the Michigan Rule of Professional Conduct ("MRPC") 3.6. MRPC 3.6, Trial Publicity, provides, in relevant part:

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter. A statement is likely to have a substantial likelihood of materially prejudicing an adjudicative proceeding when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:

(1) the character, credibility, reputation, or criminal record of a party, of a suspect in a criminal investigation or of a witness, or the identity of a witness, or the expected testimony of a party or witness;

\* \* \* \* \*

(b) Notwithstanding paragraph (a), a lawyer who is participating or has participated in the investigation or litigation of a matter may state without elaboration:(1) the nature of the claim, offense, or defense involved;(2) information contained in a public record;(3) that an investigation of a matter is in progress;

\* \* \* \* \*

(c) No lawyer associated in a firm or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).

Plaintiffs argue that Mr. Murphy's extrajudicial statement to the DBR stating that the Receiver's investigation "conducted to date has confirmed that Mr. Rosetto participated in securities fraud . . ." violates MRPC 3.6 because it bears upon Mr. Rosetto's character, reputation and his anticipated testimony. "Defendants' breach

of their ethical obligation further demonstrates that their statement falls outside the scope of the Receiver's authority." DE 13 at 7.

In the first instance, it should be apparent that a receiver can never be given the power to commit a tort, nor could he authorize one of his agents to commit a tort. Mr. Murphy acknowledges that to be the case by admitting the Receiver would not authorize him to violate the Michigan Rules of Professional Conduct. DE 69 at 7. But as previously indicated,[5] the question is not whether the alleged libelous statement made by Mr. Murphy violated the Michigan Rules of Professional Conduct. The question is when he made the alleged statement, was he acting under and pursuant to the authority of Receiver? Whether the statement was, in fact, libelous or a violation of the Michigan Rules of Professional Conduct is not the question at this juncture. Once again, if all a plaintiff had to do to circumvent the *Barton* doctrine was allege a receiver or his agents committed a tort, the doctrine would be eviscerated. Because Mr. Murphy was acting pursuant to and under the authority of the Receiver, the claim that he violated the Michigan Rules of Professional Conduct is irrelevant to the instant analysis.

## **CONCLUSION**

The Court finds that the *Barton* doctrine applies in this case and that Plaintiffs must obtain leave from the court that appointed the Receiver in *Securities &*

---

[5] *See* n. 3, *supra*.

*Exchange v. Gregory N. McKnight and Legisi Holdings, LLC*, Case No. 08-11887 (E.D. Mich. 2008) in order to bring this action in this Court. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [DE 11] is GRANTED based on lack of subject matter jurisdiction under the *Barton* doctrine. Because the Court lacks subject matter jurisdiction, the remainder of Defendants' motion has been rendered moot. Plaintiffs' Motion for Leave to File Second Amended Complaint [DE 38], which seeks to add a claim for punitive damages, is denied as moot. This case is dismissed without prejudice. Any other pending motions are denied as moot. This case is closed.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of June, 2017.

_____
KENNETH A. MARRA
United States District Judge